IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Terrence L. Cox, #232219 )<br><br>Petitioner, )<br><br>vs. )<br><br>Wayne McCabe, Warden )<br><br>Respondent. )<br>_____ ) | Civil Action No. 6:11-1535-CMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

The petitioner is currently confined at Lieber Correctional Institution in the South Carolina Department of Corrections ("SCDC"). On September 19-21, 2005, the petitioner was convicted at trial of murder, armed robbery, and three counts of assault and battery with intent to kill. The petitioner was represented by Chief Public Defender Orrie West at trial. Judge Paula H. Thomas sentenced the petitioner to 30 years imprisonment on the murder charge, 30 years for armed robbery, and 20 years on each assault, all to be served concurrently (App. 327-28). The petitioner appealed.

Deputy Chief Attorney for Capital Appeals, Robert M. Dudek of the South Carolina Office Commission on Indigent Defense, Division of Appellate Defense,

represented the petitioner on appeal. On April 11, 2007, counsel filed a Final *Anders*[1] Brief of Appellant in the South Carolina Court of Appeals and raised the following issue:

> Whether the judge erred by refusing to permit appellant to present evidence that the decedent being shot down the street was unrelated to the poker game armed robbery at the apartment, since the judge's ruling barring "third-party guilt" evidence denied appellant his right to present relevant evidence in his defense?

(*Anders* Brief 3).

Counsel also submitted a petition to be relieved as counsel as "in his opinion, the appeal [was] without legal merit sufficient to warrant a new trial." (*Anders* Brief 9). On April 13, 2007, the Clerk of the South Carolina Court of Appeals advised the petitioner of his right to file a "*pro se* brief addressing any issues you believe the Court should consider in this appeal." The petitioner submitted his *pro se* brief on or about May 25, 2007. The South Carolina Court of Appeals dismissed the appeal on September 11, 2008. *State v. Cox*, Unpublished Opinion No. 2008-UP-528 (S.C.Ct.App. 2008). The petitioner did not seek rehearing and did not seek further review by the Supreme Court of South Carolina. The South Carolina Court of Appeals issued the remittitur on September 29, 2008.

On October 7, 2008, the petitioner filed an application for post-conviction relief ("PCR"), in which he raised the following claims:

1. Ineffective Assistance of Trial Counsel;

2. Denial of Sixth and Fourteenth Amendment; and

3. Inactions and failure to do pretrial investigation.

(App. 350).

---

[1] *Anders v. California*, 386 U.S. 738 (1967).

2

The State made a return to the application on December 5, 2008 (App. 377-80). Paul Archer represented the petitioner in the action. An evidentiary hearing was held April 27, 2009, before the Honorable Steven H. John. Judge John allowed the petitioner to amend the application at the hearing (App. 431). The following issues were raised at the hearing:

1. Failure to object to fatal variances in the indictments, in that the indictments charged him as a principal, yet at trial the hand of one is the hand of all theory was used by the State;

2. Counsel abandoned the Applicant at a critical stage of trial when she conceded material facts and agreed that the hand of one is the hand of all doctrine applied in her closing argument;

3. Failure to object when the prosecutor vouched for testimony of a key witness and the co-defendants;

4. Failure to call a key witness at trial; and

5. The trial court abused its discretion in failing to grant counsel's motion for directed verdict and by giving an erroneous jury charge on the "hand of one is the hand of all" theory.

(App. 439).

The petitioner stated that he intended to raise only these five issues, and further stated he waived and/or abandoned any and all other issues (App. 397, 430-31). At the conclusion of the hearing, Judge John denied relief (App. 432-34). On May 28, 2009, the judge issued a formal written order (App. 436-44). The petitioner appealed the denial of relief.

Appellate Defender Kathrine H. Hudgins of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented the petitioner on appeal. Counsel filed a *Johnson* Petition for Writ of Certiorari in the Supreme Court of South Carolina on January 29, 2010, and raised the following issue:

> Did the PCR judge err in refusing to find counsel ineffective for conceding in closing argument that there was enough evidence to find petitioner liable for his actions at the card game?

(*Johnson* Petition, 2).

Counsel also moved to be relieved of appointment as, "[i]n her opinion seeking certiorari from the order of dismissal [was] without merit." (*Johnson* Petition, 7). On February 1, 2010, the State submitted a letter in lieu of a formal return. Also by letter of February 1, 2010, the Clerk of the Supreme Court of South Carolina informed the petitioner of his right to file a *pro se* response. The petitioner filed a *pro se* response on or about March 18, 2010. The Supreme Court of South Carolina denied the petition on April 21, 2011, and issued the remittitur on May 12, 2011.

## UNDERLYING CASE FACTS

This case stems from the armed robbery and shooting of individuals at a local poker game. On April 10, 2003, Leon Curtain, "Mo" Chestnut, James Chestnut, Keizar Randall, Kevin Grissett, and Shawn Simmons were playing poker at Curtain's apartment. Al Livingston and Frankie Williams were present, but away from the table. Frankie Williams was near the door, apparently acting as a doorman, admitting people to play whom the group knew (App. 178-82, 187; 206; 220). Jessie Williams was also present in the home, but in a separate area off the main living space where the poker game was played (App. 215).

At approximately midnight, Curtain testified that he heard what he thought were firecrackers outside the apartment, and then two men burst in, firing handguns. One

of the assailants turned off the lights, stood in front of the door, and stated, "'I got your m***** f****** now. Give it up,' and started shooting" (App. 108, 182-83, 184). Grissett and Williams both testified that two guns were used – a semi automatic handgun and a revolver. Curtain was shot in the arm by the man with the semi automatic handgun. Kevin Grissett was shot in both legs by the same man. Jessie Williams was shot in his right leg, and Keizar Randall was shot in the left leg, also by the man with the semi automatic weapon. The man with the revolver was collecting the money from the game (App. 184-86. 204, 206, 219-20, 228, 234, 235-36).

Law enforcement officers first arrived at the scene at approximately 12:58 a.m. Officers noted a Texaco card on the door mat. Officers also collected six bullets, four shell casings, and several bullet fragments. Approximately two hours after arriving, officers were approached with the report of a body next door. Emergency personnel transported the individual to the hospital. Curtain, who was already at the hospital for treatment of his gunshot wound to the arm, identified the person as Frankie Williams. Williams was pronounced dead at the hospital ( App. 80, 82, 83, 112; 121-22, 126, 193, 233; 238-39).

Investigators determined the Texaco card left at the scene was from a company where the petitioner had worked. Subsequently, a search of the petitioner's residence yielded two boxes of 9mm bullets, as well as a receipt from the Texaco card found on the scene (App. 106; 115, 174). The bullets from the scene were attributed to two guns – a .32 caliber gun and a 9mm caliber gun. A .32 caliber bullet at the scene and the two .32 caliber bullets recovered from Williams' body were fired by the same gun. The 9mm bullets and shell casings found at the scene were consistent with the type of ammunition retrieved from the petitioner's home, bearing the same head stamp (App. 159-63).

The petitioner was interviewed by investigators on April 30, 2003. He admitted participating in the armed robbery. He admitted grabbing the money inside the apartment and receiving a share of four to five hundred dollars of the stolen money. He admitted

5

knowing the "guy outside" was shot and this was the guy who was by the door and ran outside. The petitioner also admitted the 9mm gun used was his and that he had "passed that off" to one of the other participants to use (Interview Tr. 2-5, 9, 14, 24, 30).

At trial, the petitioner admitted the statement was freely and voluntarily given, with the knowledge and understanding of his rights, and with the knowledge that the statement "could and would" be used against him (App. 56-58).

## FEDERAL HABEAS ACTION

In his *pro se* Petition for Writ of Habeas Corpus, the petitioner makes the following claims of error:

> Ground One: Was Petitioner denied his right to fair trial when the judge erred by refusing to permit Petitioner to present evidence that the decedent being shot down the street was unrelated to the poker game armed robbery at the apartment. There was evidence the decedent was shot forty to fifty yards away from the side of the poker game armed robbery, and Petitioner was erroneously denied his right to present a complete defense that the decedent being shot was unrelated to the armed robbery. The Judge's ruling barring "third-party guilt" evidence was objectively unreasonable under *Holmes v. South Carolina*.

> Ground Two: Did the State Courts err in refusing to find counsel ineffective for conceding Petitioner's guilt in closing argument that there was enough evidence to find Petitioner liable for his actions at the card game?

> Ground Three: Did the PCR Court err in failing to find Counsel ineffective for failing to move to dismiss the charges, where the indictments listed Petitioner as the sole principal of crimes, since this was a material variance in the indictment and proof presented during trial?

Ground Four: Did the PCR Court err in failing to find Counsel ineffective for failing to object to the Solicitor improperly vouching for testimony of one of the State's key witnesses?

Ground Five: Did the PCR Court err in failing to find Counsel ineffective for failing to call a eye witness to the crime and the failure to do so denied Petitioner his right to cross-examination?

(Pet. mem. in supp. 5-12).

On November 18, 2011, the respondent filed a motion for summary judgment. By order filed on November 21, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed his response in opposition on December 19, 2011.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex*

7

*Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir.1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule

203 SCACR; S.C. C ode Ann. § 17–27–10, *et seq*. ; S.C. Code Ann. § 17–27–90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).[2] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17–27–45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir.1983).

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue

---

[2]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986). "Cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999) (quoting *Murray*, 477 U.S. at 488). Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir.1995). In order to demonstrate a miscarriage of justice, a

petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998).

### Ground One

In this ground, the petitioner contends that he was denied the right to a fair trial because the trial court erred in failing to admit evidence of third party guilt (Pet. mem. in supp. 2-4). During the trial, the petitioner's trial counsel asked a witness if there were other shootings going on in the area where the poker game was held in April 2003. The State objected when counsel continued and asked if there had "recently" been problems in the area (App. 194). After a sidebar conference, the judge allowed the question about prior shootings near the time of the murder, but would not allow questions on recent shootings (around the time of trial). Trial counsel agreed with the court that the question about shootings in the area established a type of third party guilt although she did not specifically use this theory in the petitioner's defense (App. 195-96, 199-200, 276-78). This issue was raised in the *Anders* brief on direct appeal and was dismissed by the South Carolina Court of Appeals. Accordingly, the issue will be addressed on the merits. *See Johnson v. McCall*, C.A. No. 1:09-1348-MBS-SVH, 2010 WL 3824708, at *8 (D.S.C. Aug. 3, 2010).

This ground for relief fails. In federal habeas actions, courts do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding. *See Spencer v. Murray*, 5 F.3d 758, 762 (4th Cir.1993). The United States Constitution guarantees a criminal defendant the right "to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). In South Carolina, the admissibility of evidence of third party guilt is governed by the rule set forth in *State v. Gregory*, 16 S.E.2d 532 (S.C. 1941) in which the South Carolina Supreme Court stated:

> [T]he evidence offered by accused as to the commission of the crime by another person must be limited to such facts as are inconsistent with his own guilt, and to such facts as raise a reasonable inference or presumption as to his own innocence; evidence which can have (no) other effect than to cast a bare

> suspicion upon another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible.... But before such testimony can be received, there must be such proof of connection with it, such a train of facts or circumstances, as tends clearly to point out such other person as the guilty party. Remote acts, disconnected and outside the crime itself, cannot be separately proved for such a purpose.

16 S.E.2d at 534-35. The petitioner cites the United States Supreme Court's ruling in *Holmes v. South Carolina*, 547 U.S. 319 (2006), in which the Court found that the South Carolina Supreme Court's ruling in *State v. Gay*, 541 S.E.2d 541 (S.C. 2001) applied the third party guilt evidentiary rule in a manner that was too restrictive and denied the defendant his right to a fair trial. *Holmes*, 547 U.S. at 330-31. The South Carolina Supreme Court in *Gay* had focused on the "strong evidence of the [defendant's] guilt" in determining whether evidence of third party guilt was admissible. *Gay*, 541 S.E.2d at 545. Importantly, the Supreme Court specifically stated that the rule of *State v. Gregory* is the type of rule that does not deny a defendant his right to present a complete defense. *Holmes*, 547 U.S. at 328-31.

In the present case, at trial, the petitioner's counsel asked a witness whether at the time of the murder the area where the poker game was held was a dangerous area, i.e. whether there were other incidents of shootings in the area (App. 194). The State only objected when counsel asked if there had "recently" been problems in the area (App. 194). The judge allowed the question about prior shootings near the time of the murder, but would not allow questions on "recent," i.e. at the time of the September 2005 trial, as such evidence would not be contemporaneous to the April 2003 shooting and was therefore not relevant (App. 196-200). The petitioner has failed to show that any evidence was excluded that raised facts "inconsistent with his own guilt" or created "a reasonable inference or presumption as to his own innocence." *See Gregory*, 16 S.E.2d at 534. The evidence excluded by the judge related only to shootings in the area over two years after the crime at issue and did nothing more than raise a conjectural inference as to the commission of the

13

crime by someone other than a member of the armed robbery group. Accordingly, no error occurred when the trial court excluded the evidence, and this claim fails.

### Ineffective Assistance of Counsel

The remaining four grounds in the petition are for alleged instances of ineffective assistance of counsel. The issues were raised to and ruled upon by the PCR judge and were available for review on appeal. In his *Pro Se Johnson* Petition for Writ of Certiorari, the petitioner complained that his PCR appellate counsel had not adequately briefed all the issues ruled upon by the PCR judge, which may be construed as asking the appellate court to review those issues as well. Accordingly, this court will address the claims on the merits.

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)). There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690.

The review of ineffective assistance of counsel claims in federal habeas is centered upon whether the state court decision was reasonable. 28 U.S.C. § 2254(d). Moreover, each step requires deference – deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n.

14

> 7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

### *Ground Two*

In Ground Two of his petition, the petitioner alleges that the state court erred in refusing to find his trial attorney ineffective in conceding the petitioner's guilt in closing (Pet. mem. in supp. 5- 6). The petitioner testified at the PCR hearing that counsel "conceded to my guilt" though "no witnesses were produced that ever testified to seeing [the petitioner] at the scene," seeing him shoot anyone, or "having any involvement with the armed robbery" (App. 398). He admitted, however, that he gave a statement that "plainly admitted my presence at the scene... and that someone else shot the victim... and... committed the robbery" (App. 398). The petitioner further testified that counsel should not have conceded the applicability of the "hand of one is the hand of all" theory cited by the prosecution during trial (App. 399; *see* App. 289).

The record shows that during closing arguments at trial, defense counsel acknowledged to the jury that the petitioner "made a confession that you listened to about his involvement in the incident that occurred at the card game" (App. 289). Counsel also did not dispute what the prosecutor told the jury regarding the "hand of one is the hand of them all . . ." (App. 289). Counsel continued to argue that the State had not proven that the petitioner was guilty of the murder committed outside the apartment (App. 289-94).

At the PCR hearing, counsel testified that she informed the petitioner there were "problems with the case because of the statements against his interest that he had made." Counsel also testified that she had explained the "hand of one is the hand of all

theory" to the petitioner and that it would be applicable in his case. The petitioner told counsel that he understood that the State would use the theory at trial (App. 413-18). Counsel further testified that her strategy, given the admission, was to separate the card game violence from the murder (App. 422).

The PCR judge ruled:

> The Applicant also alleged that counsel abandoned him and conceded material facts at trial. The Applicant stated that the "hand of one is the hand of all" theory should not apply to him because his statement to police, and other evidence presented at trial, indicated that others committed the crimes in question. This allegation is without merit because the "hand of one is the hand of all" clearly did apply to the Applicant's charges. His voluntary statement illustrates a classic example of overwhelming guilt under the hand of one is the hand of all theory. The Applicant admitted that he planned the armed robbery with others, provided a weapon, placed himself at the scene of the crime, and removed money from the victims' apartment while the others were shooting the victims. Trial counsel fully explained the hand of one is the hand of all theory to the Applicant during their discussions, especially in the context of plea negotiations. Contrary to Applicant's assertions, counsel's conduct did not lessen the State's burden of proof, nor did it violate the Applicant's due process rights. Accordingly, this Court find that trial counsel was not ineffective for failing to dispute the applicability of the "hand of one is the hand of all" theory.

(App. 440- 41).

The ruling demonstrates the PCR judge reasonably applied *Strickland* to the facts of this case. The petitioner admitted his part in the armed robbery, which would support a guilty verdict for any crimes committed within the commission of that act. *See State v. Mattison*, 697 S.E.2d 578, 584 (S.C. 2010) ("Under the 'hand of one is the hand of all' theory, one who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate incidental to the execution of the common design and purpose." (quoting *State v. Condrey*, 562 S.E.2d 320, 324 (S.C. Ct. App. 2002))). Further, the United States Supreme Court has rejected a presumption of prejudice "based solely on a defendant's failure to provide express consent to a tenable strategy counsel has adequately disclosed to and discussed with the defendant." *Florida v. Nixon*, 543 U.S. 175, 179 (2004). The record shows a consensus in the approach here: a fair inference from the

16

record is that defense counsel's strategy was in line with the petitioner's own attempt, as reflected in his statement, to admit some responsibility in the robbery to possibly avoid penalties for the shootings and murder. As argued by the respondent, the attempt to separate the murder from the robbery so as to have a basis to avoid the "hand of one is the hand of all" theory relied on assessing whether the act was a consequence of the common design. *See* 3 Am.Jur. Proof of Facts 2d 551 § 6 (June 2012) (" Whether or not the act done was in furtherance of the common design, or whether it was a natural and probable consequence flowing from the execution of the common design is always a question for the jury."). Whether or not the petitioner objected to the strategy, the decision remains a strategic one that is counsel's decision to make and one reasonably made in this instance in light of the petitioner's admissions. *See generally United States v. Chapman*, 593 F.3d 365, 368-69 (4th Cir. 2010) ("The only decisions that have been identified by the Supreme Court as belonging exclusively to the defendant are 'whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.'. . . .The reasonableness of the tactical decision actually made by counsel is of course subject to challenge, but the decision is not unreasonable simply because the client expressed a contrary view." (quoting *Jones v. Barnes,* 463 U.S. 745, 751 (1983))). Based upon the foregoing, it was reasonable for the PCR court to find that the petitioner had not shown that his attorney was deficient under *Strickland*.

In addition to finding the testimony of trial counsel to be "candid and highly credible on all issues," the PCR court found that the petitioner was not prejudiced given the overwhelming evidence of his guilt (App. 439, 443). In sum, even if some deficiency in representation could be found, the deficiency "could not have prejudiced the outcome of the trial" (App. 443). The PCR court found as follows:

> The Applicant gave a statement to the police, which he admitted was voluntary, outlining his involvement in the planning and carrying out of the crimes, and admitting that his nine-millimeter gun was used. His guilt under the "hand of one is the hand of all" theory was conclusively established by his own statement. In addition to the statement, the State also presented evidence that

17

> a gas card from the Applicant's former out-of-state employer was found at the scene, and that bullets found in the victims' apartment were consistent with nine-millimeter bullets found in the Applicant's home. In light of the overwhelming evidence, any errors on the part of counsel could not have contributed to the guilty verdict in this case.

(App. 443). It was not unreasonable for the PCR court to find that the petitioner did not show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Accordingly, this ground for relief is without merit.

### Ground Three

In this ground, the petitioner claims that the PCR court erred in failing to find counsel ineffective for not moving to dismiss the charges. Specifically, he alleges that he was charged as a principal in all the indictments with no reference to his co-defendants and that this constituted a material variance since the State relied upon the "hand of one is the hand of all" theory at trial (Pet. mem. in supp. 7-8).

The PCR judge ruled on this issue, finding that the indictments were proper, even if the State depended solely the "hand of one is the hand of all" theory in seeking the conviction (App. 440 (citing *State v. Batchelor*, 661 S.E.2d 58, 59-60 (2008) ("the State may present an indictment charging a defendant as a principal base upon information of aiding and abetting the crime charge.")). *See also State v. Dickman*, 534 S.E.2d 268, 269 (2000)("It is well-settled that a defendant may be convicted on a theory of accomplice liability pursuant to an indictment charging him only with the principal offense."). The PCR judge further found that the petitioner failed to show prejudice because, even if the indictments had been quashed as improper, the Solicitor would have re-indicted the petitioner (App. 440).

A question of substantive South Carolina law is not proper for habeas corpus consideration. State courts "are the ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975). Federal habeas is unavailable to retry state issues. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972). "A federal court may not issue the writ on the basis

of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1989). Accordingly, this claim should be dismissed.

Furthermore, the PCR judge reasonably found that the petitioner failed to show prejudice as the State had the authority to re-indict (App. 440). The record reflects the PCR judge reasonably applied *Strickland* to the facts of this case, and the petitioner is not entitled to relief on this ground.

### Ground Four

In Ground Four of his petition, the petitioner alleges that the PCR court erred in finding counsel ineffective for not objecting to the prosecutor's improper vouching during the trial. Specifically, the petitioner contends that his counsel should have objected to the prosecutor's remarks during the closing argument regarding co-defendants who were not the focus of the petitioner's trial. The petitioner also argues that the prosecutor "improperly vouch[ed]" for Keizar Randall's testimony (Pet. mem. in supp. 9-10).

The petitioner raised these issues at his PCR hearing. (App. 401-02). The PCR judge noted that, in his closing argument, the prosecutor "commented to the jurors that they needed not be concerned about the co-defendants, because the trial at hand was that of the [petitioner]" (App. 441). Specifically, the prosecutor stated as follows regarding the co-defendants in his closing:

> You heard evidence that they - their charges haven't gone anywhere, but there are things and there's reasons where you don't try people together and that's a decision I have to make. That should not enter into your deliberations. I mean, it's just not relevant, and I want to tell you that because I don't want you to think that we're hiding something or that we're not, you know, trying everybody. It's not the case. He's first of the three. That's all it is.

(App. 284). The prosecutor also commented that evidence – including testimony regarding medical treatment – supported Keizar Randall's having been shot, though Randall did not testify (App. 285-86). Defense counsel testified at the PCR hearing that she did not consider any of the comments improper (App. 419). Specifically, as to any allegation the comments or failure to call the witnesses allowed a "lessening" of State's burden of proof, counsel

testified that she did not want witnesses to testify to gory details (App. 426-28).  The PCR judge found:

> This Court finds that the solicitor's comments, on the whole, were not improper, but, in any event, any improprieties in the solicitor's particular verbiage were not unduly prejudicial to the Applicant. This is especially true considering the overwhelming evidence of guilt.

(App. 441).

The PCR judge's finding was a reasonable application of *Strickland* based on the facts of the case.  It is clear from the record that the petitioner simply did not carry his burden of proof in showing the prosecutor's comments constituted vouching. "Vouching occurs when a prosecutor indicates a personal belief in the credibility or honesty of a witness ...." *United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir. 1997) (citing *United States v. Lewis,* 10 F.3d 1086, 1089 (4th Cir. 1993)).  As argued by the respondent, the challenged comments centered on why witnesses were not called – not that certain testimony from the witnesses should be believed.  Moreover, even if the comments could be construed as improper, there is no indication that they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (citing *United States v. Mitchell,* 1 F.3d 235, 240 (4th Cir.1993)).  Given the overwhelming evidence of the petitioner's guilt, the PCR court was reasonable in finding that even if counsel was to be found deficient in representation, there was no prejudice (App. 441, 443).

### Ground Five

In his final ground for relief, the petitioner claims the PCR court erred in failing to find his attorney ineffective for failing to call Keizar Randall as a witness during trial (Pet. mem. in supp.  11-12).  During the PCR hearing, the petitioner testified that counsel failed to call Randall and alleged that this failure violated his right to confront the witness against him (App. 405-06).  Counsel testified that she did not want the witness to testify where graphic testimony could be admitted regarding the details of the shooting (App. 426-27).  She testified that she was well aware of who Randall was and that he was a federal prisoner at the time of trial (App. 427-28).  Specifically, counsel testified as follows:

I didn't think it was to my client's best interest. Again, my client -
- and I never - - didn't believe that he was the shooter. I always
believed that he was not the shooter. Whether or not Mr. Randall
had been shot or the other person had been shot, and whether
or not someone was deceased was not the issue.

I knew my client didn't do them, so I didn't think it was to his
benefit to bring this defendant up to say he got shot when I know
he wasn't going to say it was my client, but that didn't matter
because under the accomplice liability theory, my client would
still be in trouble, and that, to me - - that just put more stuff on
him that the jury didn't actually need to hear.

(App. 427-28). Defense counsel further stated that she felt it was in the petitioner's best
interest to keep the final closing argument (App. 428).

The PCR judge found:

Counsel acknowledged that Randall would have been unable to
specifically identify Applicant as a shooter. In fact, none of the
victims specifically identified the perpetrators of these crimes.
However, the lack of identification was irrelevant where the
Applicant placed himself at the scene of the crime, with the co-
defendants, in his voluntary statement. Further, if called as a
witness, Randall would have testified that he was shot during the
occurrence. This testimony would not have been helpful to the
defense. Further, counsel stressed that she felt it was important
to not call any defense witnesses, so that she could retain the
final closing argument. This Court finds that counsel was clearly
not ineffective for failing to call Mr. Randall as a witness. This
allegation is without merit.

(App. 442).

Whether to call a certain witness is a fundamental matter of strategy reserved
for counsel. *United States v. Chapman*, 593 F.3d at 369. Counsel expressed a sound
reason for not calling Randall. Moreover, the PCR judge correctly noted that identity was not
an issue based on the petitioner's statement admitting his participation. As argued by the
respondent, the danger of presenting more graphic testimony about the shooting outweighed
any benefit from testimony that would show an absence of identification. *See Wong v.
Belmontes*, 130 S.Ct. 383, 387-88 (2009) (noting that reviewing courts must consider the
value of proposed evidence with the danger of the proposed evidence). The facts of the
shooting had been admitted through other witnesses, and the medical testimony regarding

21

Randall's wounds was brief (*See* App. 186, 206, 217-20, 228-29). The PCR judge reasonably concluded that counsel was not deficient in this matter. Further, as noted above, the PCR judge found the evidence of guilt was overwhelming (App. 443). Even if the petitioner could show an error in the failure to call Randall, he cannot prove prejudice. The record shows that the PCR judge reasonably applied *Strickland* to the facts supported by the record, and this claim fails.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 26) be granted.

s/ Kevin F. McDonald
United States Magistrate Judge

July 16, 2012
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.